UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

FILED
MAR 03 2026
U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal No. 1:26-cr-16 |
| KURT SIEU LY, | Violations: 18 U.S.C. § 1343 |
| Defendant. | |

# INDICTMENT

The Grand Jury charges that:

## INTRODUCTION

At all times relevant to this Indictment:

1.      The defendant, **KURY SIEU LY**, was a resident of Morgantown, in Monongalia County, West Virginia, within the Northern District of West Virginia.

2.      Vinh Phat, Inc. is a West Virginia business corporation formed in or about 1994 that operated a restaurant called Peking House.

### The COVID-19 Pandemic and the CARES Act

3.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted on or about March 2020, designed to provide emergency financial assistance to the millions who were suffering the economic effects caused by the COVID-19 pandemic.

4.      Among other relief efforts, the United States sought to provide financial support to

eligible businesses that could be used to offset certain business expenses.

5.      The Small Business Administration ("SBA") is an executive branch agency of the United States government that provides support to entrepreneurs and small businesses. The SBA is headquartered in Washington, D.C. and maintains its computer servers outside of the State of West Virginia. The SBA's mission is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

6.      As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

## The Paycheck Protection Program

7.      One of the loans created was the Paycheck Protection Program ("PPP") loan. This program provided loans to small businesses for job retention and certain other expenses.

8.      To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. One requirement is that the business had to be in operation as of February 15, 2020. In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its average monthly payroll expenses and number of employees. These figures were then used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, a business applying for a PPP loan had to provide documentation showing its payroll expenses.

9.      A PPP loan application must be processed by a participating lender, such as a financial institution. If a PPP loan is approved, the participating lender funds the PPP loan using

its own monies, which are 100% guaranteed by the SBA. Data from the application, including the information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

10. The PPP loan proceeds must be used by the business on certain permissible expenses – payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal of the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses a certain percentage of the PPP loan proceeds on payroll expenses.

11. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia through January 10, 2021 and after January 11, 2021 through SBA servers located in Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

### The Economic Injury Disaster Loan Program

12. The second source of relief provided by the CARES Act was the expansion of an existing disaster-related program, the Economic Injury Disaster Loan ("EIDL") Program. The EIDL Program was an SBA program designed to provide economic relief to eligible small businesses that were experiencing substantial financial disruption due to the COVID-19 pandemic. Through the EIDL Program, the CARES Act authorized the SBA to provide working capital in the form of low interest, long-term loans

13. To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees and gross revenues for the 12-month period preceding the date of the disaster (January 31, 2020).

Applicants certified that all the information in the application was true and correct to the best of their knowledge.

14. EIDL applications were submitted directly to the SBA. The amount of the loan was determined, in part, on the information provided by the applicant, including information about gross revenues, as described above.

15. Any funds issued under an EIDL loan were issued directly from the United States Treasury. EIDL funds could be used for working capital to pay fixed debts, payroll, accounts payable, and other necessary business obligations that could not be met as a direct result of the disaster.

16. EIDL loan applications were electronically submitted or caused to be submitted by the borrower and received through the SBA servers located in Iowa.

## PPP and EIDL Loans

17. On or about April 14, 2020, **KURT SIEU LY** submitted an application for a first draw PPP loan through United Bank, reporting that he employed 14 individuals and that his average monthly payroll was $8,618.04. As a result of those representations, **KURT SIEU LY** was awarded a loan in the amount of $21,500.00.

18. On or about July 20, 2020, **KURT SIEU LY** submitted an application for an EIDL loan, reporting a gross revenue of $414,952.00 and costs of goods sold as $121,757. On August 5, 2020, **KURT SIEU LY** signed the Loan Authorization and Agreement. As a result of this agreement, on March 11, 2021, **KURT SIEU LY** received $146,500 from the SBA into his United Bank account ending in x8344. In his loan agreement, **KURT SIEU LY** acknowledged that he would only use the loan proceeds for working capital and that it would not be used for personal, family, or household purposes.

19. On or about March 10, 2021, **KURT SIEU LY** completed an application for a second draw PPP loan at United Bank. **KURT SIEU LY** reported that his monthly payroll was $8,504.72 and that he had 7 employees. **KURT SIEU LY** reported his business suffered a more than 25% reduction in gross receipts due to the pandemic. As a result of those representations **KURT SIEU LY** received a PPP loan of $29,766.00.

20. On or about June 15, 2021, **KURT SIEU LY**'s first draw PPP loan was forgiven, based on his affirmation that he used the entire amount of his first draw PPP loan for payroll expenses.

21. On or about June 9, 2022, **KURT SIEU LY**'s second draw PPP loan was forgiven based on his affirmation that he used the entire amount of his second draw PPP loan for payroll expenses.

**COUNT ONE AND TWO**
(Wire Fraud)

22. Paragraphs 1 through 21 of this Indictment are hereby realleged as if fully set forth herein.

The Scheme to Defraud

23. Beginning in or about April 14, 2020 and continuing until in or about June 9, 2022, defendant **KURT SIEU LY** knowingly devised, intended to devise and participated in a scheme and artifice to defraud the United States, through the SBA, by obtaining funds by means of materially false and fraudulent pretenses, promises, and representations, and for the purpose of executing the scheme, did knowingly make and cause to be made, wire communications in interstate commerce.

24.     The purpose of the scheme and artifice was for **KURT SIEU LY** to obtain money and to eliminate his debt by obtaining forgiveness of his PPP loans under false and fraudulent pretenses and by making false representations regarding the use of the PPP funds.

25.     It was part of the scheme that **KURT SIEU LY** used the money obtained through PPP loans for his personal expenses, including investments in foreign companies.

26.     It was part of the scheme that **KURT SIEU LY** affirmed, under penalty of perjury, that the entire amount of the loan was used for payroll costs, despite **KURT SIEU LY**'s use of the money for investments and personal expenses unrelated to Peking House.

27.     On or about the dates specified as to each count below, in Morgantown, in Monongalia County, in the Northern District of West Virginia, **KURT SIEU LY** did knowingly transmit or cause to be transmitted by means of wire communications in interstate commerce, the following writings, signs, signals, pictures, and sounds.

| Count | Date | Description |
| --- | --- | --- |
| 1 | June 15, 2021 | An internet transmission originating from West Virginia to the SBA server in Oregon constituting a false and fraudulent application for forgiveness of a PPP loan |
| 2 | June 9, 2022 | An internet transmission originating from West Virginia to the SBA server in Oregon constituting a false and fraudulent application for forgiveness of a PPP loan |

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

Wire Fraud

1.  Pursuant to Title 28, United States Code, Sections 2461(c), Title 18 United States Code, Sections 981(a)(1)(C), 1956(c)(7)(A), and 1961(1) and Title 21, United States Code, Section 853, the government will seek the forfeiture of property as part of the sentence imposed in this case, that is, the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1343, or a conspiracy to violate such offense, including a money judgment in the amount of at least $197,766.00.

2.  Pursuant to Title 28, United States Code, Section 2461(c), the government will seek forfeiture of substitute property up to the value of property subject to direct forfeiture that is not available for forfeiture on account of any act or omission contemplated by Title 21, United States Code, Section 853(p)(1).

A true bill,

/s/
Foreperson

/s/
MATTHEW L. HARVEY
United States Attorney

Jennifer T. Conklin
Assistant U.S. Attorney

Morgan McKee
Assistant United States Attorney